UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THORNCREEK APARTMENTS I, LLC, | ) | |
| THORNCREEK APARTMENTS II, LLC, and | ) | |
| THORNCREEK APARTMENTS III, LLC, | ) | 08 C 869 |
| | ) | 08 C 1225 |
| Plaintiffs, | ) | 08 C 4303 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| VILLAGE OF PARK FOREST, an Illinois municipal | ) | |
| corporation, TOM MICK, in his individual capacity and | ) | |
| as Village Manager, MAE BRANDON, in her | ) | |
| individual capacity and as Village Trustee, BONITA | ) | |
| DILLARD, in her individual capacity and as Village | ) | |
| Trustee, GARY KOPYCINSKI, in his individual | ) | |
| capacity and as Village Trustee, KENNETH W. | ) | |
| KRAMER, in his individual capacity and as Village | ) | |
| Trustee, ROBERT McCRAY, in his individual capacity | ) | |
| and as Village Trustee, GEORGIA O'NEILL, in her | ) | |
| individual capacity and as Village Trustee, | ) | |
| LAWRENCE KERESTES, in his individual capacity | ) | |
| and as Village Director of Community Development, | ) | |
| and JOHN A. OSTENBURG, in his individual capacity | ) | |
| and as Mayor of the Village of Park Forest, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The Village of Park Forest, Illinois, brought the first of these three consolidated suits

against Thorncreek Apartments II, LLC, in the Circuit Court of Cook County, Illinois, alleging

zoning code and building code violations. After removing the suit to federal court, Doc. 1 (08 C

869), Thorncreek II counterclaimed against the Village and filed third-party claims against

several Village officials, Doc. 102 (08 C 869). In February 2008, Thorncreek Apartments III,

LLC, filed suit in federal court against the Village and several of its officials. Doc. 1 (08 C

1225). And in July 2008, Thorncreek Apartments I, LLC, filed a materially identical suit in

federal court.  Doc. 1 (08 C 4303).  For ease of reference, and unless otherwise indicated, the three Thorncreek entities (there are others, but they are superfluous and may be ignored) will be referred to collectively as "Thorncreek," the Village and its officials will be referred to collectively as "the Village," Thorncreek's claims and counterclaims will be referred to simply as "claims," and all docket entries will refer to Case 08 C 1255.

Thorncreek's claims against the Village, which were brought under 42 U.S.C. §§ 1981, 1983, 1985, and 1986, and Illinois law, arose from the Village's denial of Thorncreek's requests for licenses to operate a multifamily dwelling, denial of "certificates of occupancy" required to house new tenants, promulgation and allegedly discriminatory enforcement of an electricity ordinance, and denial of a conditional use permit for Thorncreek's leasing office.  Thorncreek alleged that the Village targeted it because the vast majority of its tenants were African-American, and also out of irrational animus towards Thorncreek's principal owner, David Clapper.  Although the three cases were assigned to three different judges, the parties agreed to consolidate their cross-motions for summary judgment for decision in 08 C 1225 before the undersigned judge.  Doc. 132.  The court denied Thorncreek's motion, and granted in part and denied in part the Village's motion.  Docs. 198-199 (reported at 970 F. Supp. 2d 828 (N.D. Ill. 2013)).  The three cases were then consolidated for all purposes, including trial, before the undersigned judge.  Doc. 202.

After a thirteen-day trial, the jury found in favor of Thorncreek on its § 1983 class-of-one equal protection claims against the Village and Village Manager Tom Mick, and on its § 1985(3) conspiracy claim against Mick and Village Director of Community Development Lawrence Kerestes; the jury found in favor of the Village, Mick, and Kerestes on Thorncreek's race discrimination claims, and in favor of the other defendants (all defendants other than Mick, the

Village, and Kerestes) on all of Thorncreek's claims. Doc. 372. The jury awarded $1.00 to Thorncreek I, which operated a group of buildings known as Area F; $2,014,00.00 to Thorncreek II, which operated a group of buildings known as Area G; and $1.00 to Thorncreek III, which operated a group of buildings known as Area H. *Id*. at 8. The jury awarded punitive damages of $5,000.00 against Mick and $1,000.00 against Kerestes. *Id*. at 9. The court entered judgment consistent with the verdict. Doc. 370.

**Discussion**

Before the court are three motions challenging or seeking to amend various aspects of the judgment.

## I.    Mick and Kerestes' Rule 50(b) Motion for Judgment as a Matter of Law

Mick and Kerestes have moved under Federal Rule of Civil Procedure 50(b) for judgment as a matter of law. Doc. 384. They argue that because § 1985(3) liability can lie only where there has been race- or class-based discrimination, and because the jury found only a class-of-one equal protection violation and rejected Thorncreek's race-based equal protection claim, the jury's verdict against them on the § 1985(3) claim cannot stand. *Id*. at 3-5. Thorncreek defends the § 1985(3) verdict only on the merits; it does not contend that Mick and Kerestes failed to preserve their ability to seek such relief under Rule 50(b). Doc. 404.

Section 1985(3) creates a civil damages action against two or more persons who "conspire … for the purpose of depriving" the plaintiff of "the equal protection of the laws" and who take or cause to be taken "any act in furtherance of the object of such conspiracy." 42 U.S.C. § 1985(3). Settled law holds that a plaintiff can prevail under § 1985(3) only if it first establishes an underlying equal protection violation, meaning that the absence of an underlying equal protection violation precludes § 1985(3) liability. *See Xiong v. Wagner*, 700 F.3d 282, 297

(7th Cir. 2012) ("As discussed, plaintiffs have not made a showing sufficient to establish the existence of racial animus on the part of defendants. Accordingly, plaintiffs' conspiracy claim falls with their equal protection claim, and summary judgment in defendants' favor is appropriate."); *Sow v. Fortville Police Dep't*, 636 F.3d 293, 305 (7th Cir. 2011) ("The district court also correctly determined that the absence of any underlying violation of Plaintiff's rights precludes the possibility of Plaintiff succeeding on a conspiracy claim."); *Bublitz v. Cottey*, 327 F.3d 485, 488 n.3 (7th Cir. 2003) ("Our discussion of Mr. Bublitz's § 1983 claim is sufficient to dispose of his other claims. Section 1985 prohibits conspiracies to interfere with civil rights …. Because we hold that neither Mr. Bublitz nor the deceased members of his family have suffered a deprivation of their constitutional rights under § 1983, there is similarly no constitutional violation to support these other claims."); *Indianapolis Minority Contractors Ass'n, Inc. v. Wiley*, 187 F.3d 743, 754 (7th Cir. 1999) ("As a threshold matter, we note that the absence of any underlying violation of the plaintiffs' rights precludes the possibility of their succeeding on this conspiracy count.").

Thorncreek does not seriously dispute this proposition, but it contends that the jury *did* find an underlying equal protection violation. True enough, but that violation was a class-of-one violation, not a race-based violation; in fact, the jury explicitly rejected Thorncreek's race-based equal protection claim. This is significant, for settled law further holds that the equal protection violation necessary to predicate a § 1985(3) claim must be a race-based or other class-based violation, not a class-of-one violation. *See Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) ("Section 1985(3) prohibits a conspiracy to deprive another of equal protection under the law …, but the conspiracy must be motivated by racial, or other class-based discriminatory animus. Smith has failed to sufficiently allege such animus because status as a parolee is not considered a

'suspect class' for equal-protection purposes.") (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971), and *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002)); *Bowman v. City of Franklin*, 980 F.2d 1104, 1109 (7th Cir. 1992) ("§ 1985(3) does not reach bias based on economic status" or "nonracial political conspiracies"); *Munson v. Friske*, 754 F.2d 683, 695 n.8 (7th Cir. 1985) ("We follow the Seventh Circuit precedent requiring a class-based invidiously discriminatory animus to be proved in all section 1985(3) cases because the Supreme Court added the animus requirement in order to give full effect to the language and purpose of the statute."); *Underfer v. Univ. of Toledo*, 36 F. App'x 831, 833-34 (6th Cir. 2002) (citable pursuant to 6th Cir. L. R. 32.1) (holding that a class-of-one claim cannot underlie a § 1985(3) claim); *Grimes v. Smith*, 585 F. Supp. 1084, 1089-90 (N.D. Ind. 1984) (Posner, J.) (rejecting a § 1985(3) claim because "there is no racial or similar hostility behind the conspiracy in the present case that would take it out of the category of purely political conspiracies"), *aff'd*, 776 F.2d 1359 (7th Cir. 1985); *Snyder v. Smith*, 7 F. Supp. 3d 842, 850 (S.D. Ind. 2014) ("Neither the Supreme Court nor the Seventh Circuit has credited a 'class of one' conspiracy claim under Section 1985(3), and such a broad interpretation would be inconsistent with the Supreme Court's command that the statute be construed in a limited manner."); *Gross v. Town of Cicero*, 2006 WL 288262, at *12 (N.D. Ill. Feb. 1, 2006) ("a 'class of one' theory does not support a claim under Section 1985(3)"), *aff'd in part, rev'd in part on other grounds*, 619 F.3d 697 (7th Cir. 2010); *McCleester v. Dep't of Labor & Indus.*, 2007 WL 2071616, at *15 (W.D. Pa. July 16, 2007) (compiling cases). Accordingly, Thorncreek's victory on its class-of-one claim does not provide the indispensable predicate for its § 1985(3) claim, which means that Thorncreek's verdict on the § 1985(3) claim cannot stand.

Because the jury found against Kerestes only on Thorncreek's § 1985(3) claim, and because that particular finding cannot stand, the court grants Rule 50(b) relief to Kerestes and

vacates the judgment against him.  The judgment against Mick will not be disturbed, however, because he also was found liable on the class-of-one claim, which he has not challenged.

## II.     Thorncreek's Rule 59(a) Motion for a New Trial on Damages

Thorncreek has moved under Rule 59(a)(1)(A) for a new trial on damages.  Doc. 382.  "A new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party."  *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014).  Thorncreek advances three grounds for a new trial on damages, but all fail to persuade.

### A.     The Village Counsel's References to David Clapper's Wealth

Before trial, Thorncreek moved *in limine* to bar, among other things, any references to or evidence regarding the wealth and personal financial status of David Clapper, Thorncreek's principal owner.  Doc. 258.  (Clapper apparently is a wealthy man.  *See* Kaya Morgan, *David Clapper – Success Runs Deep*, http://www.islandconnections.com/edit/clapper.htm (last visited May 17, 2015), which appears to be a puff piece about Clapper authored by a publicist, which refers to Clapper as a "Michigan business tycoon," which shows photographs of Clapper with, among others, the first President Bush, Pope John Paul II, and Kevin Nealon, and which was not offered or admitted into evidence at trial.)  The Village did not oppose the exclusion of such evidence, Doc. 272, and the court granted the motion in relevant part, Doc. 377.

Thorncreek seeks a new trial on damages on the ground that the Village's counsel referenced and elicited testimony regarding Clapper's wealth and assets—which, according to Thorncreek, led the jury to award it less money than it should and otherwise would have.  Doc. 383 at 11-13.  As initially presented, Thorncreek's argument suffered from the fact that its Rule 59(a)(1)(A) motion did not attach copies of the relevant transcripts.  *See Bankston v. State of Ill.*,

1994 WL 11614, at *2 (N.D. Ill. Jan. 3, 1994) ("The defendants do not cite to exact passages in the record nor do they attach excerpts of the transcript.…  Accordingly, it is impossible to conclude that the jury could not reasonably have found that the five elements of the FLSA exemption were not satisfied.").  After filing its reply brief, Thorncreek cured the problem with a supplemental brief—whose filing the court allowed, Doc. 422, over the Village's objection, Doc. 421—that did quote and attach relevant transcripts.  Doc. 423.  So the court will consider Thorncreek's contentions on the merits, though its consideration will be limited to the matters set forth in Thorncreek's supplemental brief, as Thorncreek itself represented that the supplemental brief gives the court the "specific references to the trial transcripts and the statements made on the record by witnesses and the Defendants' counsel that Plaintiffs reference in their Motion and Brief and Reply Brief." *Id*. at 2.  Before concluding its supplemental brief, Thorncreek said that it might provide the court with additional transcripts: "As the Plaintiffs receive the last of the requested transcripts, Plaintiffs will seek leave to the extent necessary to further provide the Court with examples of the testimony and conduct of Defendants' counsel that should result in Plaintiffs receiving a new trial on the issue of damages only." *Id*. at 4.  The court gave Thorncreek months to provide additional transcripts showing improper conduct by the Village's attorneys, but none were filed.

First, Thorncreek notes that when the Village's counsel was examining a business associate of Clapper's about a telephone conversation with Clapper, counsel asked the witness where he (the witness) was during the call.  The witness answered, "Evanston or some other spot in metropolitan Chicago," and counsel then asked where Clapper was during the call, and the witness answered: "Mr. Clapper was either one of two places.  He was either in his offices in Michigan, or he was on his boat in the Mediterranean."  Doc. 423-1 at 3.  Thorncreek's counsel

objected and moved to strike, but only on speculation grounds, and the court overruled that objection. *Ibid.* Thorncreek did not object on relevance or any other grounds, so the court had no occasion to rule on any such objection.

As the court explained at the next break, outside the jury's presence:

> There was an objection to the question and answer regarding where Mr. Clapper was during the phone call. It was either in Michigan or on a boat in the Mediterranean. There was only one objection to that, and that objection was "speculation." It's not speculative for one party of a conversation to testify as to where the other person was[,] because those kinds of things are generally discussed on the phone. There might have been other objections to that question and to that testimony. Those objections were not made. Therefore, I didn't rule on them.

Doc. 433 at 3. When Thorncreek's counsel responded that the testimony violated the court's *in limine* ruling regarding Clapper's wealth, the court explained that such an objection had not been made:

> [T]here were 26 or 27 motions *in limine*, so – and with some prior objections, the objection said, "ruling on the motion *in limine*," and that prompts me to think about the motion *in limine*. That objection was not made to … the answer about the boat in the Mediterranean.
>
> If you want to rely on … a ruling on a motion *in limine* in making an objection, you've got to tell me …. [I]f we had one or two or three motions *in limine*, it would be different, but we had 26 or 27. And you said "Speculation," and I understood that was the only basis for the objection. And if you had said "Speculation and motion *in limine*," then we could have gone there.
>
> I don't know how the objection based on the motion *in limine* ruling would have come out; but it wasn't presented, and, therefore, I didn't rule on it.
>
> *       *       *
>
> [I]f a lawyer intentionally arranges to ask a question where … the lawyer knows that the answer is going to violate the motion *in limine*, that's not a good thing, and I'm not applauding that. And if it happens, there will be very serious consequences.
>
> But as to the point [Thorncreek's counsel] was making, the fact that … it was, "Objection, speculation," and the fact that only a speculation objection was

being made, the necessary implication of that is that an objection based on the motion *in limine* was not being made. There was no way for me to know that you actually thought that it violated the motion *in limine*, because if you had, you would have said so. So, I did not understand you to be making an objection based on the motion *in limine* ruling. You did not make an objection based on the motion *in limine* ruling.

And so in the future, if you do want – both sides, if you want to rely on a motion *in limine* ruling in making an objection, just say, "motion *in limine* ruling." Obviously don't get into the details of the motion *in limine*, because again, that would defeat the point of having the motion *in limine*.

*Id.* at 6, 8-9.

The court time and again during trial told the parties that it was their obligation not only to make objections, but to make specific objections. That warning accorded with settled precedent holding that, to preserve an evidentiary objection for a Rule 59(a) motion or for appeal, a party must make that specific objection on the record:

> To preserve an issue for appellate review, a party must make a proper objection at trial that alerts the court and opposing party to the specific grounds for the objection. An objection is proper when a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context …. *Neither a general objection to the evidence nor a specific objection on other grounds will preserve the issue for review.* When a defendant does not object to the admission of evidence during the trial, the objection is waived and cannot be raised for the first time in a motion for new trial or on appeal.

*Naeem v. McKesson Drug Co.*, 444 F.3d 593, 610 (7th Cir. 2006) (ellipses in the original, citations and internal quotation marks omitted, emphasis added); *see also Christmas v. City of Chicago*, 682 F.3d 632, 640 (7th Cir. 2012) ("Plaintiffs did not object to the officer's specific testimony at trial, but instead asked the district judge to admonish the witness to adhere to the court's rulings. By failing to object, Plaintiffs may not raise the issue for the first time in a motion for a new trial or on appeal."). "A motion for a new trial is not the appropriate place to raise for the first time arguments that could have been brought earlier in the proceedings." *Prod. Specialties Grp., Inc. v. Minsor Sys., Inc.*, 513 F.3d 695, 699 (7th Cir. 2008). By failing to object

to the witness's answer on the ground that it improperly referenced Clapper's wealth in violation of the ruling on the motion *in limine*, Thorncreek forfeited the objection.

In any event, Thorncreek contends that the court later "instructed the Jury to disregard the testimony" regarding Clapper's whereabouts during the call. Doc. 383 at 11. If Thorncreek is correct—it does not cite the relevant portions of the transcript—then any possible harm would have been cured. *See Soltys v. Costello*, 520 F.3d 737, 744 (7th Cir. 2008) ("We presume that juries follow the instructions given them by the court."); *Turner v. Miller*, 301 F.3d 599, 604 (7th Cir. 2002) ("absent an overwhelming probability that the jury will be unable to disregard inadmissible evidence and a strong likelihood of a devastating effect from the evidence, we will presume that a jury will follow a curative instruction").

Second, Thorncreek contends that the Village's counsel made "inflammatory, prejudicial and improper statements … during closing arguments." Doc. 423 at 3. However, in the portion of the closing argument attached to Thorncreek's supplemental brief, Thorncreek's counsel did not once object to the supposedly objectionable arguments. Doc. 423-2 at 2-6. Any objections to those arguments accordingly are forfeited. *See Venson*, 749 F.3d at 657 (holding that the losing party at trial "waived" an argument that the prevailing party's lawyer violated a motion *in limine* ruling during closing argument "by not making an objection at the time"); *Howard v. Terry*, 527 F. App'x 507, 511 (7th Cir. 2013) (same); *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 445 (7th Cir. 2010) (same, noting that the forfeiture resulted from the fact that "the appellant did not contemporaneously object to the statements"); *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (same); *Soltys*, 520 F.3d at 745 (same).

Third, Thorncreek contends that the Village's attorney "elicited testimony from their expert Pakter that suggested to the Jury that Mr. Clapper had already received too much money

from the property by suggesting he had taken millions from same even though there was no evidence presented to the Jury in support of the assertion." Doc. 423 at 4. The portion of the transcript attached to Thorncreek's supplemental brief shows that Thorncreek's counsel objected to the form of the question on the ground that the question "assumes facts not in evidence." Doc. 423-3 at 3. The court overruled the objection, stating: "I'm going to overrule the objection. As the jury knows, what counsel says is not evidence. Counsel is putting numbers in front of the witness and asking the witness to do something with the numbers. It's up to you to decide the weight of the testimony that is being given based upon all the evidence that was presented in the case." *Ibid*. Thorncreek does not argue, let alone show, that its objection was resolved in an incorrect manner.

### B. Manifest Weight of the Evidence

Next, Thorncreek argues the jury's award of nominal damages to Thorncreek I (Area F) and Thorncreek III (Area H) was against the manifest weight of the evidence given that the jury awarded $2,014,00.00 in damages to Thorncreek II (Area G). Doc. 383 at 13-15. The governing standard is this:

> The Supreme Court has long recognized that a district court can grant a motion for a new trial if the verdict was against the weight of the evidence. In passing on a motion for a new trial, the district court has the power to get a general sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial. If, after evaluating the evidence, the district court is of the opinion that the verdict is against the manifest weight of the evidence, a new trial is appropriate.

*Mejia v. Cook Cnty.*, 650 F.3d 631, 633 (7th Cir. 2011) (citations omitted). A Rule 59(a) motion seeking a new trial on damages should be denied "as long as there is a reasonable basis in the record to support" the jury's assessment of damages. *Frizzell v. Szabo*, 647 F.3d 698, 702 (7th Cir. 2011); *see also Pickett*, 610 F.3d at 440 ("We uphold a jury verdict on appeal as long as a reasonable basis exists in the record to support this verdict.").

Thorncreek's principal argument is that because "Area H presented the exact same type of data that Area G presented[,] … if the Jury was able to find that Area G proved its damages, it necessarily had to find Area H proved its damages using the same method to calculate." Doc. 383 at 14-15. The Village offers several explanations as to how the jury reasonably could have awarded damages for Area G but not for Area H. Doc. 406 at 12-14. Among the more plausible explanations is that the Village electrical upgrade ordinance—which, according to Thorncreek, was enacted for the purpose of discriminating against Clapper—affected only Area G and not Area H. *Id.* at 13. Based on the evidence presented at trial, the jury reasonably could have determined that the Village's enacting and enforcing the ordinance was the only conduct that actually harmed Thorncreek, and that Area H was not harmed because it had already received the required upgrades. Tellingly, although the Village set forth this explanation in its response brief, Thorncreek ignored it in its reply, thus implicitly conceding that the jury reasonably could have distinguished Areas G and H on this ground.

Thorncreek's manifest weight argument focuses almost exclusively on Area H; indeed, its initial and reply brief both state that the jury's nominal damage award "to Area F *and in particular* Area H" was against the manifest weight of the evidence. Doc. 383 at 15 (emphasis added); Doc. 414 at 5 (same). The only attention Thorncreek pays to Area F specifically is to contend: "As to Area F, there was no evidence presented to rebut the damage calculation of [Thorncreek expert] Mr. Frazee." Doc. 383 at 15. This contention is so thin as to constitute a forfeiture.

Even putting aside forfeiture, there was plenty of evidence that could have led the jury to find that while compensatory damages were warranted for Area G, none were appropriate for Area F. As with Area H, the jury could have concluded that the only Village action that caused

damage was the electrical ordinance and that the ordinance did not harm Area F.  Or, the jury could have found that Thorncreek's return on investment from selling Area F was so substantial as to render harmless any class-of-one violation by the Village.  Both sides agree that the jury calculated its damage award for Area G by taking the value of Area G and subtracting the mortgage debt on the property.  Doc. 383 at 15; Doc. 406 at 14.  As for Area F, the jury heard evidence that Thorncreek made a handsome profit when it sold Area F for $16 million; from that evidence, the jury could reasonably have concluded that Area F was not harmed financially by the constitutional violation committed by the Village.

### C.        The Village's Use of Pre-2005 Documents

Finally, Thorncreek contends that the Village's pre-2005 exhibits should have been excluded at trial.  Doc. 383 at 15-17.  Those exhibits were largely, if not exclusively, *Thorncreek* financial documents (*e.g.*, mortgage papers, refinancing agreements), and the Village used those documents largely, if not exclusively, to rebut Thorncreek's submission that it suffered financial harm from the Village's actions.  (The court says "largely, if not exclusively" rather than "exclusively" because Thorncreek's motion does not identify by exhibit number the exhibits about which it is complaining, so the court is not completely sure about the scope of Thorncreek's complaint.)  The Village did not obtain those documents from Thorncreek; Thorncreek contends that the Village's written discovery requests did not call for the production of those documents, and the court will assume for the sake of argument that Thorncreek is right on that point.  Rather, the Village obtained those documents from governmental entities such as the Cook County Recorder of Deeds and the Michigan Department of Licensing and Regulatory Affairs.  Even though the documents were Thorncreek business records, the Village produced them to Thorncreek approximately five months before trial.  The Village later noted that its

damages expert would rely on those documents and offered to submit the expert for another deposition, but Thorncreek never took up the Village on that offer.

The court addressed Thorncreek's arguments at a February 4, 2014 hearing in denying Thorncreek's motion to strike the Village's supplemental disclosure, Docs. 219, 227, and again in denying Thorncreek's first motion in limine at the pretrial conference on April 1 and 6, 2014, Docs. 255, 344-345, 377. Incorporating those rulings by reference, the court again rejects Thorncreek's arguments regarding the pre-2005 documents.

That said, the court will briefly address Thorncreek's contention that allowing the Village to use pre-2005 Thorncreek documents was inconsistent with the Magistrate Judge's ruling early in the case on Thorncreek's motion to compel that *some*, but *not* all, of Thorncreek's written discovery requests to the Village would be limited to the time period after January 1, 2005. Docs. 43, 50. As an initial matter, the Magistrate Judge did not hold that all pre-2005 documents were irrelevant; rather, he allowed discovery into *some* pre-2005 matters, and Thorncreek does not attach the relevant transcript, leaving the court unclear as to the basis of his ruling on the other pre-2005 matters. Perhaps the Magistrate Judge concluded that the burden on the Village of searching for pre-2005 documents outweighed the value of such discovery; that ruling would turn not on Rule 26(b)(1) relevance, but on Rule 26(b)(2)(C) balancing. Moreover, that some pre-2005 *Village* documents might have been deemed irrelevant says nothing about whether pre-2005 *Thorncreek* financial documents are also irrelevant. Finally, the first three documents on Thorncreek's exhibit list were from August 1999, January 2003, and May 2003, Doc. 326-1 at 2, so it lies poorly in Thorncreek's mouth to argue that the Magistrate Judge somehow made all pre-2005 documents categorically irrelevant. In sum, Thorncreek gives no basis for concluding

that the Magistrate Judge's ruling speaks in any conceivable way to Thorncreek's pre-2005 financial documents or provides any conceivable basis for excluding those documents.

## III.  Thorncreek's Rule 59(e) Motion to Amend the Judgment to Include Prejudgment Interest

Thorncreek has moved under Rule 59(e) to amend the judgment to include an award of prejudgment interest.  Doc. 379; *see Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989) ("a postjudgment motion for discretionary prejudgment interest constitutes a motion to alter or amend the judgment under Rule 59(e)").  Specifically, Thorncreek seeks $501,032.88 in prejudgment interest for the Area G compensatory damage award.  Doc. 380 at 7.  In response, the Village argues that no prejudgment interest should be awarded.  Doc. 405.  The Village does not take issue with Thorncreek's calculation of the prejudgment interest that would be owed if prejudgment interest was appropriate, thus forfeiting any such argument.  (Thorncreek also seeks and $1.20 in prejudgment interest for each of the Area F and Area H nominal damage awards, but it provides no basis for its calculation and fails to explain why prejudgment interest is appropriate on a nominal damage award.)

Whether to award prejudgment interest is a matter committed to the district court's discretion.  *See RK Co. v. See*, 622 F.3d 846, 853 (7th Cir. 2010).  That said, over twenty-five years ago, the Seventh Circuit adopted a presumption in favor of awarding prejudgment interest: "[T]he time has come … to generalize, and to announce a rule that prejudgment interest should be presumptively available to victims of federal law violations.  Without it, compensation is incomplete and the defendant has an incentive to delay.'"  *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989); *see also McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 572 (7th Cir. 2003) ("The rule we articulated in *Gorenstein* was broad and we have consistently applied the presumption in favor of prejudgment interest for willful

violations of federal law in the years since."); *United States v. Bd. of Educ. of Consol. High Sch. Dist. 320*, 983 F.2d 790, 799 (7th Cir. 1993) (same); *Lorenzen v. Emps. Ret. Plan of the Sperry & Hutchinson Co.*, 896 F.2d 228, 236 (7th Cir. 1990) ("Whether to award prejudgment interest in suits under federal statutes is a question of federal law, and, with growing awareness of the time value of money, the trend is running in favor of such awards.").  This presumption "limit[s]" the discretion otherwise provided to the district court.  *Consol. High Sch.*, 983 F.2d at 799.

The presumption favoring prejudgment interest applies to this case, as Thorncreek would not be made whole absent such an award.  As evidenced by its verdict, the jury concluded that the Village impaired Area G's value by approximately $2 million, thereby causing Thorncreek to realize $2 million less on the property than it otherwise would have.  Thorncreek's recovery of that $2 million was delayed, and Thorncreek deserves to be compensated for the time-value of money lost through the date of judgment.  *See First Nat'l Bank of Chi. v. Standard Bank & Trust*, 172 F.3d 472, 480 (7th Cir. 1999) (holding that it is "clear that prejudgment interest must make the victim whole"); *Partington v. Broyhill Furniture Industries, Inc.*, 999 F.2d 269, 274 (7th Cir. 1993) ("Money has a time value, and prejudgment interest is therefore necessary in the ordinary case to compensate a plaintiff fully for a loss suffered at time t and not compensated until t + 1, 2, 3 … n.…  Because of litigation delay, Partington lost the use of money that was rightfully his.  If he would have neither paid interest with the money nor invested it, this just shows that he would have derived even greater value (by his lights) from the money by using it for additional current consumption—perhaps by eating better, or driving a fancier car.  He was deprived of that value."); *Consol. High Sch.*, 983 F.2d at 799 ("Without [prejudgment interest], compensation is incomplete and the defendant has an incentive to delay."); *Lorenzen*, 896 F.2d at 236 (holding that prejudgment interest "is a salutary trend—without it there is incomplete compensation to

victims of wrongdoing and there are added incentives to resist and delay the bringing of the wrongdoer to book"); *Gorenstein*, 874 F.2d at 436 (same).

The Village offers four reasons why Thorncreek should not receive a prejudgment interest award. Doc. 405. Each lacks merit.

## A. Ascertainability

The Village first argues that because prejudgment interest may be awarded only if "the amount of the Plaintiffs' damages [were] easily ascertainable prior to trial" and not where damages "are the subject of a good faith dispute," *id*. at 2-3, such interest should not be awarded here because Thorncreek's damages were not readily ascertainable before trial, *id*. at 5-6. Most of the Seventh Circuit decisions on which the Village relies for this proposition, however, interpret *state* statutes governing prejudgment interest and/or were issued before *Gorenstein* announced that prejudgment interest should be presumptively available. *See Wickens v. Shell Oil Co.*, 620 F.3d 747, 757-58 (7th Cir. 2010) (Indiana law); *Ameritech Info. Sys., Inc. v. Bar Code Res., Inc.*, 331 F.3d 571, 575 (7th Cir. 2003) (Illinois law); *Donnelly v. Yellow Freight Sys., Inc.*, 874 F.2d 402, 411 (7th Cir. 1989) (federal law, pre-*Gorenstein*); *Williamson v. Handy Button Mach. Co.*, 817 F.2d 1290, 1298 (7th Cir. 1987) (federal law, pre-*Gorenstein*); *Pub. Serv. Co. of Ind., Inc. v. Bath Iron Works Corp.*, 773 F.2d 783, 796 (7th Cir. 1985) (Indiana law); *Moutsopoulos v. Am. Mut. Ins. Co. of Boston*, 607 F.2d 1185, 1190 (7th Cir. 1979) (Wisconsin law); *Taylor v. Phillips Indus., Inc.*, 593 F.2d 783, 787 (7th Cir. 1979) (federal law, pre-*Gorenstein*). "Whether to award prejudgment interest in suits under federal statutes is a question of federal law," *Lorenzen*, 896 F.2d at 236, and so the decisions applying state law are inapposite; the pre-*Gorenstein* decisions have been superseded.

The Village cites one post-*Gorenstein* Seventh Circuit decision addressing prejudgment interest for federal claims, *Daniels v. Pipefitters' Ass'n Loc. Union No. 597*, 945 F.2d 906, 924 (7th Cir. 1991), that does say the following: "In cases involving violations of the federal civil rights laws, prejudgment interest is available as a matter of course on an award of backpay, so long as this amount is readily determinable." *Id*. at 924 (internal quotation marks and citations omitted). But by "readily determinable," *Daniels* did not mean what the Village supposes it meant—that the damages must have been readily calculable before trial. The Title VII plaintiff in *Daniels* sought prejudgment interest where the jury returned a general verdict making a single compensatory damage award for his backpay and emotional distress claims, yet prejudgment interest was available only for the former and not the latter. *Id*. at 924-25. In holding that the plaintiff could not obtain prejudgment interest because his backpay award was not readily determinable or ascertainable, *Daniels* meant that the jury's general verdict made it impossible to determine how much money had been awarded for backpay, on which prejudgment interest could be awarded, and how much for emotional distress, for which no prejudgment interest was possible: "[W]hen a plaintiff presents a district judge with a claim for prejudgment interest, he must have some basis on which to conclude that backpay accounts for some minimum amount of the compensatory damage award. Because the district judge has no means to parse the elements of the general verdict, prejudgment interest must be denied." *Id*. at 925. This case presents no such ambiguity or problem.

In the end, the appropriate standard is set forth in *Gorenstein*—which, as noted above, held that prejudgment interest is presumptively available for successful federal claims—and *Hutchinson v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037 (7th Cir. 1994). After characterizing the reference to "easily ascertainable" damages in *Donnelly v. Yellow Freight System, Inc.*, *supra*, as

"dicta," *Hutchinson* held that prejudgment interest could be awarded because "the amount of back pay on which interest is to be awarded in this case is not uncertain—the jury awarded $80,000," adding that "[t]he fact that the jury had to make implicit calculations to reach that amount does not defeat the presumption in favor of prejudgment interest." *Id.* at 1047. Likewise, the damages awarded by the jury here is definite, not uncertain, satisfying whatever ascertainability standard remains in the Seventh Circuit.

### B.      Compatibility with Punitive Damages

The Village next argues that because "the Seventh Circuit will not award prejudgment interest if punitive damages are awarded," and because the jury here awarded $6,000 in punitive damages (since reduced to $5,000), Thorncreek cannot recover prejudgment interest. Doc. 405 at 7. The Village's premise is incorrect; while prejudgment interest cannot be awarded on punitive damages, the general rule holds that prejudgment interest on *compensatory* damages are not incompatible with a punitive damage award. *See Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 757 (7th Cir. 2002) ("Ryan … argues that prejudgment interest is not appropriate at all because punitive damages make up almost half the award and this court has held in other contexts that prejudgment interest should not be awarded on punitive damages. But Fine seeks interest only on her award of backpay, not on her punitive damages …."); *DeRance, Inc. v. PaineWebber Inc.*, 872 F.2d 1312, 1330 (7th Cir. 1989) ("The district court did not abuse its discretion in awarding prejudgment interest on the compensatory award, which compensates for time value of money, even with the substantial punitive damages awarded.").

The Village cites some decisions holding that prejudgment interest is incompatible with punitive damages under certain particular circumstances, but those decisions are distinguishable. In *Fortino v. Quasar Co.*, 950 F.2d 389 (7th Cir. 1991), for example, the Seventh Circuit held

that prejudgment interest could not be awarded in a suit under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626(b), where, due to the violation being found willful, the compensatory damage award was doubled by statute—resulting in a liquidated/punitive damage award equal to the compensatory damage award. *Id*. at 397. The court explained: "We agree both that the purpose of prejudgment interest is to make sure that an award of compensatory damages is fully compensatory and that it is a salutary purpose—as a matter of fact we have held that such interest is presumptively available in cases under federal law. But when such interest is added to an award that is half punitive, as the plaintiffs would have us do, it ceases to have a compensatory function and becomes an unauthorized form of punitive damages." *Id*. at 397-98 (citing *Gorenstein*, 874 F.2d at 436). To that explanation, the court added that "there is a risk that an award of prejudgment interest in a case in which punitive damages have been awarded will overcompensate the plaintiff and perhaps overdeter potential wrongdoers." *Id*. at 398. And as the Seventh Circuit later noted, "ADEA liquidated damages replace prejudgment interest." *Downey v. C.I.R.*, 33 F.3d 836, 840 (7th Cir. 1994); *see also EEOC v. O'Grady*, 857 F.2d 383, 391 & n.13 (7th Cir. 1988) (same, where double/liquidated damages were awarded under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*.).

Here, by contrast, the punitive damage award did not come in the form of statutory liquidated damages that matched the compensatory damage award and served the purpose of replacing prejudgment interest. Rather, the modest punitive damage award is about 0.25% of the compensatory damage award. Under these circumstances, and in accord with decisions such as *Fine* and *DeRance*, the presence of a punitive damage award does not foreclose a prejudgment interest award.

### C.      Thorncreek Asked the Jury for Prejudgment Interest

The Village next argues that Thorncreek should not receive prejudgment interest because Thorncreek asked the jury to award prejudgment interest and presented damage figures to the jury that incorporated such interest. Doc. 405 at 8-12. In support, Thorncreek cites *Raybestos Products Co. v. Younger*, 54 F.3d 1234 (7th Cir. 1995), where the district judge awarded Raybestos, the plaintiff, prejudgment interest of $495,695 on top of the jury's compensatory damage award of $2 million. *Id*. at 1246. Younger, the defendant, appealed, arguing that "because Raybestos presented damage figures to the jury calculated both with and without interest, the jury's compensatory damage award may have included interest." *Ibid*. The Seventh Circuit agreed, holding: "Plaintiff cannot recover prejudgment interest twice. Because Raybestos provided the jury with damage figures that included interest estimates, *we will presume* that the jury's award included an interest augmentation. Accordingly, the subsequent award of prejudgment interest constituted an unauthorized doubling of damages and thus the district court's amended judgment as to the prejudgment interest must be vacated." *Id*. at 1247 (footnote omitted, emphasis added). In a footnote, and citing *Gorenstein*, the court added that "[a]dopting *this presumption* in no way conflicts with this circuit's well-established principle that prejudgment interest is presumptively available to victims of federal law violations," but that "[i]n balancing the equities, we believe that the plaintiff should not benefit from the confusion arising from its damage submission." *Id*. at 1247 n.18 (emphasis added).

As the emphasized text makes clear, *Raybestos Products* established a presumption against prejudgment interest, not an absolute prohibition, where the plaintiff asks the jury to include prejudgment interest in its verdict. *Cf. Sackett v. EPA*, 132 S. Ct. 1367, 1373 (2012) ("as with most presumptions, this one [the presumption favoring judicial review of an administrative

action] may be overcome by inferences of intent drawn from the statutory scheme as a whole"). The presumption applies here, as Thorncreek asked the jury for prejudgment interest, so the question becomes whether the presumption has been overcome. The answer is "yes." As noted in Section II, *supra*, both parties have recognized that the jury reached its compensatory damage award for Area G not by adopting Thorncreek's damage and prejudgment interest calculations, but simply by subtracting the value of Area G by the mortgage debt on the property—a figure that, resulting from simple subtraction, did not include prejudgment interest. Doc. 383 at 15; Doc. 406 at 14. Accordingly, in this particular instance, the *Raybestos Products* presumption against prejudgment interest where the plaintiff seeks prejudgment interest from the jury has been overcome, leaving in place the *Gorenstein* presumption in favor of prejudgment interest.

### D. Waiver

Finally, the Village contends that because Thorncreek's current prejudgment interest methodology and calculation differs from the methodology and calculation that it (through its expert) presented to the jury, Thorncreek waived its right to prejudgment interest. Doc. 405 at 12-13. The Village cites no legal authority for its argument, thereby forfeiting the point. *See G&S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court."); *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"). In any event, the Village does not challenge the correctness of Thorncreek's *current* methodology or calculation, so in essence it is complaining that the Village finally got it right. And the Village appears to have gotten it right, using the prime rate and compounding monthly. Doc. 380 at 5-7; Doc. 380-3; *see First Nat'l Bank*, 172 F.3d at 480 ("Our practice has been to use the prime rate as the benchmark

for prejudgment interest unless either there is a statutorily defined rate or the district court engages in 'refined rate-setting' directed at determining a more accurate market rate for interest. We hold today that to set aside this practice and award something other than the prime rate is an abuse of discretion, unless the district court engages in such a refined calculation.") (citation omitted); *Gorenstein*, 874 F.2d at 436.  If anything, the Village sold itself short, seeking interest from the month this litigation began rather than from the date of its injury.  *See Am. Nat'l Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 935 (7th Cir. 2003) ("Consequently, prejudgment interest typically accrues from the date of the loss or from the date on which the claim accrued.").

## Conclusion

For the foregoing reasons, Kerestes' Rule 50(b) motion is granted, Mick's Rule 50(b) motion is denied, Thorncreek's Rule 59(a)(1) motion for a new trial on damages is denied, and Thorncreek's Rule 59(e) motion to amend the judgment to include prejudgment interest is granted in part (as to interest on the compensatory damage award) and denied in part (as to interest on the nominal damage awards).  The judgment against Kerestes, including the $1,000 punitive damage award against him personally, is vacated.  The judgment in favor of Thorncreek II and against the Village and Mick is amended to add $501,032.88 in prejudgment interest.

May 20, 2015
_____
United States District Judge